In re Michael L. TORONTO and Diane M. Toronto, Debtors.

Bankruptcy No. 92–53340.

United States Bankruptcy Court, D. Connecticut.

March 31, 1994.

---

748

Stuart M. Sheiman, Bridgeport, CT, for debtor.

Edward Krasnow, Marc A. Krasnow, Bridgeport, CT, for movant.

## MEMORANDUM AND ORDER ON MOTION TO DISMISS

ALAN H.W. SHIFF, Bankruptcy Judge.

Sikorsky Federal Credit Union moves to dismiss this chapter 13 case or in the alterna-tive to convert it to a chapter 7 case. Be-cause I conclude that the debtors are ineligi-ble for chapter 13 relief and that conversion to chapter 7 is in the best interests of credi-tors and the estate, the motion will be grant-ed and this case will be converted to chapter 7.

## BACKGROUND

On March 15, 1989, the debtors entered into a home equity line of credit with the movant which was secured by a mortgage on the debtors' residence. On October 18, 1989, the debtors refinanced and the mortgage was released. However, the movant sent the debtors a statement indicating that the line of credit remained open.[1] The debtors con-tinued to use the unsecured line of credit until August 20, 1992, when they defaulted. On September 8, 1992, the movant obtained an attachment on the debtors' residence in the amount of $175,000.00 to secure the amount due on the line of credit. *See* Conn. Gen.Stat.Ann. § 52–278a *et seq.* (West 1991 & Supp.1993).

The debtors commenced this case on Octo-ber 9, 1992 and listed the movant's claim in the amount of $175,000.00 on Schedule D (Creditors Holding Secured Claims) as a "judgment lien" on the debtor's residence. The description of the claim included the parenthetical: "unsecured as per Motion to avoid preferencial [sic] lien." Schedule D also listed a mortgage on the residence in the amount of $129,931.00. Thus, Schedule D disclosed that the secured claims encumber-ing the residence totalled $304,931.00. Schedules A (Real Property) and D listed the market value of the residence at $204,540.00, so the encumbrances exceeded its market value by $100,391.00. It is noted that the debtors failed to disclose the movant's claim on Schedule A although they were required

---

1. The movant does not assert that the release of its prior mortgage on the debtors' home was erroneous and that the mortgage should in equity be reinstated. The holder of the existing first mortgage may have relied on the release. *See Connecticut Nat'l Bank v. Chapman,* 153 Conn. 393, 397–99, 216 A.2d 814 (1966); *Lomas & Nettleton Co. v. Isacs,* 101 Conn. 614, 619, 127 A. 6 (1924). The movant has admitted that its at-tachment is void as a preference and that its claim is wholly unsecured. *See Memorandum of Law in Support of Movant's, Sikorsky Federal Credit Union, Motion to Dismiss,* filed August 11, 1993, at pp. 2–3 ("The Movant concedes that the debtors are correct in characterizing the attach-ment as a preference and it should be avoid-ed.... Accordingly, on the date of the filing of the petition, the debt was unsecured.").

to do so. If they considered that claim to be unsecured, they should have, but did not, list it on Schedule F. As filed, Schedule F listed unsecured nonpriority claims of $31,449.54. Schedule E stated unsecured priority claims of $1,401.25. It appears then from Schedules D, E and F that the unsecured portion of the movant's claim and the other unsecured debts totalled $133,241.79.

Confusing and contradictory amendments to the schedules followed. An amended Schedule A was filed December 28, 1992, stating that the only secured claim on the residence was in the amount of $129,197.02, again an apparent reference to the mortgage not to the movant's attachment lien. Despite that amendment, Schedule D was not amended, and the Amended Summary of Schedules still stated total secured debt of $304,931.00. Another amended Schedule A was filed November 24, 1993, stating that the value of the residence was $195,000.00 and that there was no secured claim on the residence. The latter representation is incorrect, because the mortgagee filed a secured claim in the amount of $133,539.59 on November 2, 1992, the mortgage lien was not voided, and the debtor's amended plan filed December 1, 1993, proposed to cure the arrearage on that claim and continue making payments directly to the mortgagee. Further, the Amended Summary of Schedules stated secured claims of $136,320.95 and unsecured nonpriority claims of $156,937.45. Schedule D was not amended after the November 24, 1993 amendment to Schedule A. Another example of the careless preparation of the debtors' petition is the failure to disclose the movant's prepetition collection action which resulted in an attachment on their residence. *See* Statement of Financial Affairs, item no. 4.[2]

In Schedule C, filed with the petition, the debtors claimed a number of exemptions under § 522(d). They claimed no exemption on their residence. On November 24, 1993, the debtors filed an amended Schedule C which

purported to claim certain exemptions under Conn.Gen.Stat.Ann. § 52–352b (West Supp. 1993), including an exemption of $75,000.00 on the residence.

On the petition date, the debtors also filed a plan which stated in paragraph 2.d. that the movant's $175,000.00 lien "shall be deemed to be unsecured as per Motion to avoid preferential lien." On December 10, 1992, the debtors filed a Motion to Avoid A Preferential Transfer, seeking to avoid the movant's attachment, notwithstanding that such relief is available only by adversary proceeding. *See* Rule 7001 Fed.R.Bankr.P. That motion was denied for failure to prosecute on February 17, 1993. On January 11, 1993, the movant filed a proof of claim in the amount of $124,163.85 "plus 10% interest" which was asserted to be secured by the $175,000.00 attachment. On March 9, 1993, the debtors filed an objection to that proof of claim "because said debt is not secured on the basis that the attachment was made within ninety days prior to the filing of the petition and while the debtors were insolvent." On that date, the debtors also commenced an adversary proceeding, seeking to avoid that alleged preferential attachment, which was dismissed on July 14, 1993. On August 26, 1993, the debtors commenced a second adversary proceeding, seeking the same relief. The movant filed an answer admitting every allegation of the complaint, and on November 4, 1993, a judgment entered against the movant avoiding the attachment as a preference under § 547 and allowing the movant's claim as a general unsecured claim.

The instant motion to dismiss or convert this case was filed on August 11, 1993. It is noted that rather than consent to an order sustaining the debtors' objection to its proof of claim, the movant filed a motion which acknowledged that its claim was a preference. The movant now alleges that the debtors are ineligible for chapter 13 relief be-

---

2. The debtors' attorney is not alone in engaging in careless practice in this case. The movant's attorney filed an adversary proceeding seeking a determination under § 523(a)(2)(A), a cause of action that is not available to creditors in chapter 13, except in connection with a discharge granted without completion of plan payments. *See* § 1328(a)–(c). It is also noted that the debtors' attorney failed to discover that defect but proceeded with discovery and never filed a dispositive motion. The debtors' attorney subsequently moved to recover $3,900.00 in needlessly incurred attorneys' fees because the movant's action was frivolous. That motion was denied.

cause their noncontingent, liquidated, unsecured debts exceed $100,000.00. *See* § 109(e), *infra,* p. 751. Relying on the *Black's Law Dictionary* definition of "avoid," the movant argues that its preferential attachment was void *ab initio* and that the debtors therefore did not meet the chapter 13 eligibility requirements on the petition date. *See Supplemental Memorandum of Law in Support of Movant's, Sikorsky Federal Credit Union, Motion to Dismiss,* filed September 27, 1993, at p. 2. The debtors counter that "events occurring after the petition has been filed should not be used to affect the amount of debt for eligibility purposes," relying in part on *Comprehensive Accounting Corp. v. Pearson (Matter of Pearson),* 773 F.2d 751 (6th Cir.1985), and assert that because the preference could not be avoided until after the petition, the movant's claim must be treated as a secured claim as of the petition date. *See Reply Brief to Movant['']s Motion to Dismiss,* filed October 1, 1993, at p. 1.

## DISCUSSION

I note at the outset that courts in this district have approved the use by chapter 13 debtors of the trustee's power to avoid preferential transfers. *See Carr v. DeMusis (In re Carr),* 34 B.R. 653, 655 (Bankr.D.Conn. 1983), *aff'd on other grounds,* 40 B.R. 1007 (D.Conn.1984); *Ottaviano v. Sorokin & Sorokin, P.C. (Matter of Ottaviano),* 68 B.R. 238, 240 (Bankr.D.Conn.1986); *accord Russo v. Ciavarella (In re Ciavarella),* 28 B.R. 823, 826–28 (Bankr.S.D.N.Y.1983). While I acknowledge authority to the contrary, *see, e.g., Hill v. Fidelity Fin. Servs. (In re Hill),* 152 B.R. 204, 206 (Bankr.S.D.Ohio 1993); *In re Redditt,* 146 B.R. 693, 701 (Bankr.S.D.Miss. 1992), the movant did not raise that issue in the debtors' adversary proceeding in which a final judgment has entered. Accordingly, I need not revisit that issue.[3]

The issues before me are (i) whether these debtors are eligible for chapter 13 relief and (ii) if not, whether dismissal or conversion is in the best interests of the creditors and the estate.

---

**3.** The argument for permitting an eligible chapter 13 debtor to exercise avoidance powers is buttressed where the lien avoided is involuntary

## I.

## CHAPTER 13 ELIGIBILITY

The following code provisions are relevant:

Section 109(e) (chapter 13 eligibility):

Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000, or an individual with regular income and such individual's spouse ... that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000 may be a debtor under chapter 13 of this title.

11 U.S.C.A. § 109(e) (West 1993).

Section 547(b) (preferences):

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; ... and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C.A. § 547(b) (West 1993).

Section 550(a) (liability for avoided transfers):

---

and where there is a showing that the avoidance of the lien will result in a larger dividend to unsecured creditors.

Except as otherwise provided in this section, to the extent that a transfer is avoided under section ... 547 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property....

11 U.S.C.A. § 550(a) (West 1993).

Section 502(h) (allowance of claims):

A claim arising from the recovery of property under section ... 550 [after the avoidance of a lien under § 547] ... of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition....

11 U.S.C.A. § 502(h) (West 1993).[4]

■ The debtors are eligible for chapter 13 relief if they owed, on the date of filing the petition, noncontingent, liquidated and unsecured debts of less than $100,000.00.[5] The debtors do not argue that their liability on the movant's claim depends upon the occurrence of an extrinsic event, so the debt is not contingent. *In re Lewis*, 157 B.R. 253, 255 (Bankr.E.D.Va.1993). While the word "liquidated" is not defined, courts have generally held that a debt is "liquidated" if its amount is readily and precisely determinable, as where the claim is determinable by reference to an agreement or by a simple computation. *See In re Ristic*, 142 B.R. 856, 862 (Bankr.E.D.Wis.1992); *F.D.I.C. v. Wenberg (In re Wenberg)*, 94 B.R. 631, 634 (9th Cir. BAP 1988), *aff'd*, 902 F.2d 768 (9th Cir.1990).

The mere fact that the amount of or liability on a claim is disputed does not necessarily render the claim unliquidated. *In re Harbaugh*, 153 B.R. 54, 55 (Bankr.D.Idaho 1993); *In re Jerome*, 112 B.R. 563, 566 (Bankr. S.D.N.Y.1990). Further, a debtor who fails to object to a proof of claim may not assert that the claim is unliquidated. Rule 3001(f) Fed.R.Bankr.P.; *In re Rigdon*, 94 B.R. 602, 605 (Bankr.W.D.Mo.1988).

■ Here, the debtors' objection to the movant's proof of claim was that it was unsecured not that it was invalid. *See supra*, p. 750. Indeed, the debtors scheduled the claim in an amount well in excess of the amount specified in the movant's proof of claim. The debtors therefore cannot deny that the claim is noncontingent, liquidated, and over $100,000.00. The only remaining issue is whether the claim is in whole or sufficient part unsecured.

Although neither party relies on or even refers to § 502(h), that subsection is determinative here. In construing that subsection, I am constrained to follow its plain language. In doing so, however, I must recognize that "[e]ven when the meaning of language seems apparent, it must be remembered that we are attempting to ascertain Congress' purpose; where ambiguity resides in a statute, legislative history and other tools of interpretation may be employed to determine legislative purpose more perfectly." *Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. New York State Dep't of Environmen-*

4. While Rule 3002(c)(3) Fed.R.Bankr.P. permits the filing of a proof of claim to evidence an unsecured claim arising from the avoidance of a lien, such a filing would not appear to be required where, as here, the creditor has already timely filed a proof of claim which is unchallenged by the debtor in every respect except as to its secured status. *See* Advisory Committee Note (1983) ("Although the claim of a secured creditor may have arisen before the petition, a judgment avoiding the security interest may not have been entered until after the time for filing claims has expired. Under Rule 3002(c)(3) the creditor *who did not file a secured claim* may nevertheless file an unsecured claim within the time prescribed.") (emphasis added). Moreover, the original proof of claim together with the filings and orders entered in this case and the preference adversary

proceeding would meet the requirements of the informal proof of claim doctrine. *See Gaudio v. Stamford Color Photo, Inc. (In re Stamford Color Photo, Inc.)*, 105 B.R. 204, 207 (Bankr.D.Conn. 1989).

5. Because a "debt" is defined simply as "liability on a claim," § 101(12), the Supreme Court has repeatedly emphasized that the terms "debt" and "claim" are coextensive. *See Rake v. Wade*, —— U.S. ——, —— n. 11, 113 S.Ct. 2187, 2193 n. 11, 124 L.Ed.2d 424 (1993); *Johnson v. Home State Bank*, 501 U.S. 78, 84–85 n. 5, 111 S.Ct. 2150, 2154 n. 5, 115 L.Ed.2d 66 (1991). Therefore, the relevant inquiry is the amount and nature of unsecured claims on which the debtors were liable, or by operation of law deemed liable, on the petition date.

*tal Conservation,* 17 F.3d 521, 531 (2d Cir. 1994).

The debtors argue that the movant's unsecured claim arose for § 109(e) eligibility purposes when the postpetition judgment that voided the lien entered. I disagree. The movant's unsecured claim arose as a result of the debtors' "recovery" of their residence, *see* § 550(a), by the avoidance of the involuntary "transfer" of a lien to the movant, *see* § 101(54)[58]. Section 502(h) therefore mandates that the movant's claim be determined and allowed as though it had arisen before the date the petition was filed. *See Allied Cos., Inc. v. Broughton Foods Co. (In re Allied Cos., Inc.),* 155 B.R. 739, 744 (Bankr.S.D.Ind.1992) ("[S]ubsequent avoidance of the [preferential] payment relates back to the time before bankruptcy, so the claim is deemed to have been unpaid at the time the petition was filed."); *In re Ciavarella, supra,* 28 B.R. at 829 (where judgment liens were set aside as preferences by a chapter 13 debtor, the underlying claims were treated as prepetition unsecured claims); 3 Lawrence P. King, ed., *Collier on Bankruptcy* ¶ 502.08, at p. 502–101 (15th ed. 1993) ("[A] [§ 502(h)] claim ... will be allowed ... or ... disallowed ... with status as a prepetition claim existing at the time of the filing of the debtor's petition.").[6]

Arguably the reversal of a transfer under § 547 and the consequent recovery by the estate under § 550[7] should not affect the amount of prepetition debt determined under § 502(h) for eligibility purposes under § 109(e), to avoid the potentially anomalous result of a debtor recovering a preference for the benefit of creditors and thereby becoming ineligible for chapter 13 relief. I reject that construction because in my view it offends congressional policy. Reading § 502(h) as impacting on the § 109(e) determination in fact comports with the congressional purpose motivating those statutes and § 547. Those code sections effectuate three congressional goals, i.e. limitation of the availability of relief to those who satisfy statutory eligibility criteria; avoidance of certain transfers to maximize distribution to creditors; and equal treatment for similarly classified creditors.

The dollar limitations of § 109(e) reflect Congress's recognition that "a chapter 11 reorganization [might be] too cumbersome a procedure" for a sole proprietor or individual with a small amount of unsecured debt. H.R.Rep. No. 595, 95th Cong., 1st Sess. 320 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News, pp. 5787, 5963, 6277.[8] The specificity of those limitations reflects a congressional intent that they be strictly applied. *In re Cronkleton,* 18 B.R. 792, 793

---

**6.** Courts have held in other contexts that § 502(h) claims are entitled to prepetition status. *See Verco Indus. v. Spartan Plastics (In re Verco Indus.),* 704 F.2d 1134, 1139 (9th Cir.1983) (a § 502(h) claim arising from the avoidance of a prepetition transfer is deemed to be a prepetition claim which may be setoff against a mutual debt owed to the debtor); *In re Allied Cos., Inc., supra,* 155 B.R. at 744 (an avoided preference created an unsecured claim which remained unpaid as of the petition date); *County of Sacramento v. Hackney (In re Hackney),* 93 B.R. 213, 217–18 (Bankr. N.D.Cal.1988) (a § 502(h) claim arising from the recovery of a preferential payment on account of a nondischargeable debt retains the status of a prepetition nondischargeable debt).

**7.** I note that in the instant case, the debtors' attempt to claim a $75,000.00 exemption in the residence, if successful, would result in the preference having been recovered solely for the debtors' benefit. Although § 550(a) authorizes the recovery of property "for the benefit of the es-

tate," § 522(g) and (i)(2) permit the debtor to exempt property recovered under § 550 under certain conditions. Thus, it appears that, where § 522(g) is applicable, the trustee may avoid a preferential transfer under §§ 547 and 550(a) and preserve the recovered property for the benefit of the debtor, rather than for the benefit of the estate. *See infra,* pp. 757–58.

**8.** The current § 109(e) limitations of $100,000.00 in unsecured debt and $350,000.00 in secured debt represent a compromise between the House ($100,000.00 and $500,000.00, respectively) and Senate ($50,000.00 and $200,000.00, respectively) proposals. *See* H.R. 8200, 95th Cong., 1st Sess. § 109(e) (1977), *reprinted in* App. 3 Lawrence P. King, ed., *Collier on Bankruptcy* § III, p. 327 (15th ed. 1993); S. 2266, 95th Cong., 2d Sess. § 109(d) (1978), *reprinted in Collier, supra,* at § VII, p. 317. Congress is now considering an amendment to § 109(e) which would increase the chapter 13 eligibility limitation to $1,000,000.00, in the aggregate, of secured and unsecured debts. S. 540, 103 Cong., 1st Sess. § 109(a) (1993), 139 Cong.Rec. S2610–02, 2613.

(Bankr.S.D.Ohio 1982). When a preferential transfer reduces prepetition unsecured debt, § 547 effectuates the code policy of reversing that transfer.

> [T]he preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally. The operation of the preference section to deter "the race of diligence" of creditors to dismember the debtor before bankruptcy furthers the second goal of the preference section—that of equality of distribution.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 177–78 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News, pp. 5963, 6138. That policy prevents the payment of certain creditors at the expense of others through the voluntary or involuntary transfer of property that should have been estate property. The transferee receiving a prohibited transfer is returned to its pre-transfer status, i.e. the holder of an unsecured, prepetition claim. Thus, § 547 "essentially treats the estate as if it were already created during the preference period." *County of Sacramento v. Hackney,* 93 B.R. 213, 218 (Bankr.N.D.Cal. 1988). If a debtor was ineligible for chapter 13 relief at the start of the preference period, eligibility cannot be created by a preferential transfer which the debtor subsequently avoids and which is treated under the code as though it had never occurred.[9]

Indeed, reading § 502(h) so that it does not impact on the § 109(e) analysis could undermine the policy mandates of those sections. For example, if those sections were not linked, a debtor could transfer property to an unsecured creditor in an amount sufficient to bring the debtor within the § 109(e) limitations, and then avoid the transfer as a preference. Similarly, a debtor with a large amount of unsecured debt could permit one or more creditors to proceed to obtain a pre- or post-judgment attachment against the debtor's property, an occurrence which is almost inevitable, thus transforming those debts into "secured" debts. That debtor could then, as in the instant case, commence a chapter 13 case, avoid the attachment as a preference, and effectively rewrite the § 109(e) unsecured debt limitation.

■ Construing the § 109(e) unsecured debt limitation to include claims deemed unsecured by operation of the code is consistent with the approach most courts have taken in considering the effect of § 506(a)[10] on § 109(e). "It is now settled law that pursuant to 11 U.S.C. § 506(a), the secured debt above the value of the security should be included as an unsecured debt in calculation of the $100,000.00 unsecured debt limitation under 11 U.S.C. § 109(e)." *In re Jerome, supra,* 112 B.R. at 566. *Accord Brown and Co. Sec. Corp. v. Balbus (In re Balbus),* 933 F.2d 246, 247 (4th Cir.1991); *Miller v. United States,* 907 F.2d 80, 82 (8th Cir.1990); *Matter of Day,* 747 F.2d 405, 406–07 (7th Cir.1984); *In re Rifkin,* 124 B.R. 626, 628–29 (Bankr.E.D.N.Y.1991); *In re Bos,* 108 B.R. 740, 742 (Bankr.D.Mont.1989). Applying § 506(a) to § 109(e) "avoid[s] the temptation to raise form over substance" by determining the true amount of unsecured and secured debt that existed on the petition date, *Matter of Day, supra,* 747 F.2d at 407, and applying § 502(h) to treat claims that are only secured by voided liens as unsecured serves a similar function.

■ The debtors urge me to ignore the "events occurring after the petition has been filed" in determining chapter 13 eligibility. Even without § 502(h), their argument is unpersuasive. The debtors' schedules and initial plan show that the debtors intended to treat the movant's claim as unsecured from

---

9. I recognize that § 502(h) applies to claims arising from transfers avoided under several code sections other than § 547. While I will not consider the policies underlying each of those other sections, the interpretation I have afforded § 502(h) would not in my view produce an anomalous result under any of those sections.

10. 11 U.S.C.A. § 506(a) (West 1993) provides in relevant part:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim....

the inception of the case. The debtors knew or should have known from the inception of the case that the avoidance of the movant's lien would result in the creation of a large prepetition unsecured claim which would defeat their petition. Moreover, the success of the debtors' plan, which proposes to pay unsecured creditors, including the movant, a dividend of only 7.6 percent, *see* Debtors' *Third Corrected Plan,* ¶ 2.e., filed December 1, 1993, depended on the success of the preference avoidance action. Thus, the debtors considered the preference avoidance to be not a postpetition event, but rather a judicial determination of the facts as they existed on the petition date. Indeed, if I ignore the postpetition avoidance of the movant's attachment, I must also deny confirmation of the debtors' plan unless it provides for the payment in full of the movant's prepetition secured claim or the surrender of the residence to the movant. *See* § 1325(a)(5). It is apparent then that the debtors are attempting to classify the movant's claim as wholly unsecured for the purpose of distribution under the plan, but wholly secured for the purpose of determining their eligibility for chapter 13 relief, and that inconsistency is not cognizable under the code. *See In re Mason,* 133 B.R. 877, 879 (Bankr.N.D.Ohio 1991).

■■■■■ Moreover, as noted, the debtors scheduled the movant's claim as a $175,-000.00 secured claim. If I rely solely on the schedules, which the debtors presumably filed in good faith, then the amount by which the movant's claim was undersecured on the petition date, added to the other scheduled unsecured debts, exceed $100,000.00. *See supra,* pp. 749–50. Under the debtors' argument, I must ignore the fact of the postpetition filing of the movant's proof of claim in the amount of $124,163.85 "plus 10% interest," but if I do, the debtors' schedules demonstrate on their face that they are not eligible for chapter 13 relief. Most courts have held that § 506(a) should be applied for the purpose of determining the amount of secured and unsecured debts that were owed on the petition date. *See supra,* pp. 754–55.[11] That follows because the § 109(e) inquiry necessarily implicates § 506(a), even though the debtors have not sought a determination under the latter section that the movant's claim is undersecured. *Matter of Koehler,* 62 B.R. 70, 72 (Bankr.D.Neb.1986).[12]

The controversy over whether or not a court should "look beyond" the schedules to determine chapter 13 eligibility, or rely on those schedules provided they are filed in good faith, is not implicated here. *Compare Matter of Pearson, supra,* 773 F.2d at 756 *with Lucoski v. I.R.S.,* 126 B.R. 332, 337 (S.D.Ind.1991). The debtors' schedules show that they intended to treat the movant's claim as unsecured. Viewed in the light of § 506(a), they also show unsecured debt exceeding the § 109(e) limitation.[13]

11. The application of § 506(a) in this context is not eliminated by the Supreme Court's recent decision in *Nobelman v. Am. Sav. Bank,* — U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). Although § 1322(b)(2) prohibits the use of § 506(a) to bifurcate certain claims secured by *security interests* into secured and unsecured components, the movant's judicial lien, see § 101(36), would be subject to modification through a § 506(a) valuation. *Cullen v. Redlon & Johnson Supply, Inc. (In re Cullen),* 150 B.R. 1, 2 (Bankr.D.Me.1993); *Matter of Sabec,* 137 B.R. 659, 667–68 (Bankr.W.D.Mich.1992). This matter does not involve the attempted modification of a judgment lien resulting from the foreclosure of a security interest. *Cf. Midlantic Nat'l Bank v. DeSeno (In re DeSeno),* 17 F.3d 642, 645 (3d Cir.1994), *reh'g denied* (March 16, 1994).

12. While any party in interest may seek a § 506(a) valuation, *see* Rule 3012 Fed.R.Bankr. P., whether or not to seek the avoidance of a preference rests in the discretion of the trustee or debtor in possession. Where a chapter 13 trustee and debtor justifiably elect not to seek avoidance of a preference, arguably a creditor could not challenge the debtor's eligibility on the basis that the preference could have been avoided and that if it had been, the debtor would not have been eligible. In any event, where, as here, a debtor elects to avoid a preference, it is equitable to give effect to that avoidance for all purposes, including the debtor's eligibility.

13. In addition, one of the chief arguments against using § 506(a) in making a § 109(e) determination, i.e. that undue delay may result in determining the amount of allowed unsecured claims, *see In re Morton,* 43 B.R. 215, 220 (Bankr.E.D.N.Y.1984), does not apply in the instant case. Here, the parties agreed from at or near the inception of the case that the movant's claim was unsecured, and never disagreed on the amount of the claim. Further, the movant filed the instant motion to dismiss or convert before

## II.

### CONVERSION OR DISMISSAL

Having determined that the debtors are not eligible for chapter 13 relief, I must determine whether conversion or dismissal is in the best interests of the creditors and the estate. That determination requires me to consider the following code sections:

Section 1307(c) (conversion or dismissal):

> [O]n request of a party in interest ... and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause....

11 U.S.C.A. § 1307(c) (West 1993).

Section 349 (effect of dismissal):

> (a) Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(f)[g] of this title.
>
> (b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title—
>
> > (1) reinstates—
> >
> > . . . . .
> >
> > (B) any transfer avoided under section ... 547 ... of this title ...
> >
> > . . . . .
> >
> > (2) vacates any order, judgment, or transfer ordered, under section ... 550 ... of this title; and
> >
> > (3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

11 U.S.C.A. § 349 (West 1993).

Section 348(a) (effect of conversion):

> (a) Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief.

11 U.S.C.A. § 348(a) (West 1993).

■■■ I agree with those courts that have held that a court retains jurisdiction to convert a chapter 13 case to a chapter 7 case upon a determination that the debtors are not eligible for chapter 13 relief. *See Rudd v. Laughlin,* 866 F.2d 1040, 1041–42 (8th Cir.1989); *Jones v. United States (In re Jones),* 134 B.R. 274, 280–82 (N.D.Ill.1991); *In re Pennypacker,* 115 B.R. 504, 507 (Bankr.E.D.Pa.1990); *In re Wenberg, supra,* 94 B.R. at 635–37; *In re Tatsis,* 72 B.R. 908, 910–11 (Bankr.W.D.N.C.1987); *cf. First Brandon Nat'l Bank v. Kerwin–White,* 109 B.R. 626, 628–29 (D.Vt.1990) (chapter 12 eligibility is not jurisdictional). Section 109(e) relates to the eligibility of a debtor for chapter 13 relief, not the jurisdiction of the court. As noted in *In re Tatsis, supra,* 72 B.R. at 911, if the court were required to dismiss a case upon a finding of debtor ineligibility,

> [a] debtor wishing to allow the time on a preference to run in order to bar recovery would be well advised to file a Chapter 13 case.... The debtor could file, knowing that the court did not have jurisdiction, but also knowing that one, two or three months might go by before he would be deprived of the benefits of Title 11. During this time lapse, the period in which a trustee in a subsequent case could recover a preference would run and all creditors would suffer the detriment therefrom.

■■■ A debtor's ineligibility for chapter 13 relief is cause for converting the case to chapter 7. *In re Bobroff,* 32 B.R. 933, 936 (Bankr.E.D.Pa.1983). Section 1307(c) authorizes the conversion of this case to chapter 7 without the debtors' consent if that result is

the debtor even commenced the adversary proceeding resulting in the avoidance of the mov-

ant's lien. There has been no undue delay here.

in the best interests of the creditors and the estate. *Gaudet v. Kirshenbaum Inv. Co., Inc.,* 132 B.R. 670, 675–76 (D.R.I.1991). I conclude that conversion will best serve those interests.

 If this case is dismissed, § 349(b) would operate to reinstate the movant's lien and vacate the judgment against the movant in the preference adversary proceeding, unless I ordered for cause that it not be reinstated. *See Matter of Sadler,* 935 F.2d 918, 920 (7th Cir.1991). Preserving a judgment avoiding a preference for use in a subsequent case might be cause for such an order. *See Wendel v. Gordon Assocs. Advertising Public Relations, Inc. (In re Professional Success Seminars Int'l, Inc.),* 22 B.R. 554, 555–56 (Bankr.S.D.Fla.1982). However, as there does not appear to be any authority for me to dismiss the case and *order* the debtors to file a new petition, it does not appear that, at this juncture, I would have cause to order the judgment preserved upon dismissal. If I dismiss the case, do not order the preference judgment preserved, and the debtors file no new petition, the movant would be able to enforce its admittedly preferential attachment. That result would benefit the movant at the expense of all unsecured creditors and the debtors, and would permit the movant to reap the benefits of its attachment contrary to code policy. *See Marker v. Marker (In re Marker),* 133 B.R. 340, 344–45 (Bankr. W.D.Pa.1991) ("By implication, dismissal would be *in*appropriate when it would be in the interest of only one creditor and would be detrimental to debtor and to remaining creditors.") (analyzing § 305(a)(1) permitting dismissal in interest of creditors and debtor). Assuming I could find cause to preserve the judgment, the windfall would be to the debtors at the expense of all of the creditors.

If I dismiss the case without ordering the preservation of the judgment and the debtors file a new petition, the preference action would be unavailable to the debtors or any trustee in the new case because the ninety day preference reachback period, *see*

§ 547(b)(4)(A), would have expired.[14] In view of the 7.6 percent dividend in the current plan, presumably proposed as a good faith best effort, it is unlikely that the debtors could propose a higher dividend in a new case, even if the movant's undersecured claim could be bifurcated under § 506(a) in a reorganization case.

If I convert the case to chapter 7, the value of the preference recovery will be preserved for the benefit of the unsecured creditors. *See* § 348(a); *Matter of Bunn,* 128 B.R. 281, 283 (Bankr.D.Idaho 1991). Thus there would be at least the possibility of a greater and more equitable distribution to unsecured creditors. Accordingly, I conclude that it is in the best interests of the creditors and the estate to convert this case to chapter 7 rather than to dismiss it.

 That conclusion is not affected by the debtors' attempt to claim a $75,000.00 homestead exemption in the residence. Although a lien avoided under § 547 is preserved for the benefit of the estate pursuant to § 551, § 522(g)(1) and (i)(2) permit a debtor to claim an otherwise available exemption in property recovered under § 550 if the transfer was not voluntary and the debtor did not conceal the transferred property. The $75,000.00 homestead exemption, however, is not available to the debtors. It was created by 1993 Conn.Pub.Acts 93–301, which provides in sec. 3: "This act shall take effect October 1, 1993, and shall be applicable to any lien for any obligation or claim arising on or after said date." This case was commenced October 9, 1992, and the claims and liens of all creditors existed before that date. Under Connecticut law a statutory enactment affecting substantive rights, as Pub.Act 93–301 indisputably does, is presumed to have only prospective effect in the absence of a clear and unequivocal expression of a contrary legislative intent. Conn.Gen.Stat.Ann. § 55-3 (West 1985); *In re Judicial Inquiry No. 85–01,* 221 Conn. 625, 632, 605 A.2d 545 (1992); *Miano v. Thorne,* 218 Conn. 170, 175, 588 A.2d 189 (1991). The plain language of

---

**14.** I cannot determine at this juncture whether there might be some argument for the extension or tolling of the preference reachback period under those circumstances. Avoidance of the

movant's lien in a new case would, in any event, leave the parties in their present posture, requiring that the debtors proceed under chapter 7 or 11.

Pub.Act 93–301 supports a prospective application only. *See Centerbank v. Associated Risk Servs., Inc.*, 1994 WL 51183 (Conn.Sup. Ct., Feb. 7, 1994); *L. Suzio Asphalt Co., Inc. v. Ferreira Constr. Corp.*, 1993 WL 448441 (Conn.Sup.Ct., Oct. 19, 1993).

■■■ Further, the debtors may elect to employ only exemptions under the law "that is applicable on the date of the filing of the petition." § 522(b)(2)(A). An exemption resulting from the postpetition amendment of state law may not be claimed in a pending bankruptcy case. *Marcus v. Zeman (In re Marcus)*, 1 F.3d 1050, 1051–52 (10th Cir. 1993) (where the law, rather than the facts, entitling a debtor to claim an exemption changes postpetition, the law in effect on the petition date controls); *In re Gardner*, 139 B.R. 460, 462 (Bankr.E. & W.D.Ark.1991); *In re Summers*, 108 B.R. 200, 203–04 (Bankr. S.D.Ill.1989). Several courts have held that because conversion does not effect a change in the filing date, a change in the substantive exemption law postpetition but preconversion will not be applicable in the converted case. *In re Marcus, supra,* 1 F.3d at 1051–52 (distinguishing *Armstrong v. Lindberg (In re Lindberg)*, 735 F.2d 1087 (8th Cir.), *cert. denied,* 469 U.S. 1073, 105 S.Ct. 566, 83 L.Ed.2d 507 (1984), which involved a postpetition change in the facts, not the substantive law, relating to a claimed exemption); *In re Schoonover*, 147 B.R. 430, 432–33 (Bankr. S.D.Ohio 1992); *In re Stroble*, 127 B.R. 372, 374 (Bankr.W.D.Va.1991).[15]

■■■ Even where an exemption is not properly claimed by the debtor in a chapter 7 case, the absence of a timely objection binds the creditors and the chapter 7 trustee. *Taylor v. Freeland & Kronz,* —— U.S. ——, ——, 112 S.Ct. 1644, 1648, 118 L.Ed.2d 280 (1992); § 522(*l*); Rule 4003(b) Fed. R.Bankr.P. There has been no such objection in this case. However, the debtors' attorney filed an "Affidavit of Compliance" on November 24, 1993, indicating that the amended schedules were served on "the U.S. Trustee, the Indenture Trustee and all creditors listed on the Matrix." That service is not in compliance with Rule 1009(a) Fed. R.Bankr.P., which requires notice to the "trustee," i.e. the chapter 13 trustee. *See* § 101(29). Further, several courts have concluded that, where a reorganization case is converted to a chapter 7 case, a new 30 day objection period begins to run after the post-conversion meeting of creditors. *See* § 341(a) (a meeting of creditors must be convened within a reasonable time after the order for relief); § 348(a) (conversion of a case constitutes an order for relief); Rule 4003(b) Fed.R.Bankr.P. (the time for objection to claimed exemptions is 30 days after the conclusion of the meeting of creditors or filing of an amendment to the exemption schedule); *Matter of Bergen*, 163 B.R. 377 (Bankr.M.D.Fla.1994); *In re Jenkins*, 162 B.R. 579 (Bankr.M.D.Fla.1993); *LaRossa v. Leydet (In re Leydet)*, 150 B.R. 641 (Bankr. E.D.Va.1993); *but see In re Halbert*, 146 B.R. 185 (Bankr.W.D.Tex.1992). In addition, the *Taylor* Court declined to consider the issue of whether § 105(a) might authorize a court to disallow an exemption not claimed in good faith even in the absence of a timely objection. *Taylor, supra,* —— U.S. at ——, 112 S.Ct. at 1649.

Notwithstanding *Taylor,* I do not now resolve the issue of whether the trustee or other party in interest may object to the debtors' exemptions in the converted case. Resolution of that issue will await any such objection.

### ORDER

For the foregoing reasons, the instant motion is GRANTED. This case is converted to a case under chapter 7 effective on the execution of this Order, and IT IS SO ORDERED.

---

**15.** Arguably, even if Pub.Act 93–301 could be applied in a converted case, the claims and liens of the prepetition creditors in this case, which arose before the effective date of that act, are not affected. I do not now address the effect of *Owen v. Owen,* 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991) on that analysis. There, the Court held that a debtor may avoid a lien under § 522(f) to the extent the debtor would have been entitled to claim an exemption in the absence of the lien.