In re BAUMGOLD BROS., INC., Debtor.

Dorothy EISENBERG, Trustee of the Estate of Baumgold Bros., Inc., Debtor, Plaintiff,

v.

O. CENSOR & CO., INC., Defendant.

Bankruptcy No. 85–B–11208 (HCB).
Adv. No. 88–5019A.

United States Bankruptcy Court, S.D. New York.

July 6, 1989.

Shaw, Licitra, Eisenberg, Esernio & Schwartz, P.C., Garden City, N.Y. (Joseph Sferrazza, of counsel), for plaintiff.

Judah Dick, Brooklyn, N.Y., for defendant.

## DECISION

HOWARD C. BUSCHMAN, III,
Bankruptcy Judge.

This adversary proceeding presents the difficult task of interpreting the "new value" defense to a preference action.

Plaintiff, trustee of the estate of Baumgold Bros., Inc. (the debtor), by this adversary proceeding, seeks to avoid and recover, pursuant to §§ 547(b) and 550 of the Bankruptcy Code, 11 U.S.C. §§ 547(b), 550 (1986), certain preferential transfers made by the debtor to defendant O. Censor & Co. Trial was held on March 17, 1989.

### I.

The preferential nature of the payments to defendant, under section 547(b) of the Bankruptcy Code, were established by admission into evidence of Plaintiff's Request for Admission pursuant to Rule 36 of the Federal Rules of Civil Procedure. Since no response was made thereto, the facts stated therein were deemed admitted as provided in Rule 36(a).

In its Amended Answer, defendant pleaded as affirmative defenses that 1) the preferences are unavoidable because the debtor's payments to defendant were made "in the ordinary course of business," 11 U.S.C. § 547(c)(2); and 2) the amount of avoidable preferences may be partially set off by subsequent advances of "new value" by defendant to the debtor, 11 U.S.C. § 547(c)(4). Amend.Ans. ¶¶ 4–7. No evidence was offered by defendant and nothing in the record supports its assertion of the ordinary course of business defense. The only defense in issue, therefore, is the extent to which the alleged preferences are unavoidable under § 547(c)(4) by new value given the debtor by defendant during the 90 day preference period.[1]

The facts are simple. Defendant O. Censor & Co. is a diamond wholesaler who sold diamonds to the debtor (Baumgold Bros., Inc.) "on account" from January 1984 [2] to June 1985. Req. for Adm. ¶¶ 14, 22, Ex. B.

---

1. In addition to its affirmative defenses, defendant interposed a counterclaim to rescind an alleged settlement agreement between defendant and the trustee, in the amount of $3,600, for a preference claim by the trustee of $3,714.44. Amend.Ans. ¶¶ 8–11. Defendant asserts that this agreement was to resolve any and all claims by the trustee against the defendant, and that defendant would not otherwise have agreed thereto. *Id.* ¶ 10. In its counterclaim, defendant also asserts that when it entered into the settlement agreement it was unaware of its "legal rights" to set off the $3,714.44 preference against subsequent new value. *Id.* ¶ 9. Since no evidence was submitted to support these allegations, they must be dismissed.

2. Plaintiff's Request for Admissions alleges that the debtor and defendant were doing business since January 1984. Exhibit B thereto contains, however, an invoice from defendant dated January 3, 1983. This may be a typographical error.

On July 25, 1985 certain creditors of the debtor filed an involuntary chapter 11 Bankruptcy petition, and on October 30, 1985 the debtor filed a voluntary petition for relief pursuant to chapter 11. *Id.* ¶¶ 2, 3. By court order dated February 4, 1986, the debtor's chapter 11 case was converted to chapter 7, and plaintiff Dorothy Eisenberg was appointed Interim Trustee of the debtor's Bankruptcy estate. *Id.* ¶¶ 4, 5. Pursuant to § 702(d) of the Bankruptcy Code, plaintiff was later elected permanent trustee. *Id.* ¶ 5.

During the 90 days preceding July 25, 1985 (the date of the original Bankruptcy petition), the debtor made the following payments to defendant:

| | |
|---|---|
| 5/9/85 | $25,000 |
| 5/16/85 | 25,000 |
| 5/22/85 | 25,000 |
| 6/3/85 | 25,000 |
| 6/6/85 | 25,000 |
| 6/13/85 | 25,000 |

*Id.* ¶ 18. Exhibit B of Plaintiff's Request for Admissions consists of invoices from defendant from January 1, 1983 [3] to April 4, 1985, establishing that the debtor owed defendant money on account of an antecedent debt prior to the 90 day preference period. In their Proposed Findings of Fact and Conclusions of Law the parties agree, and we find, on the scant record of this case,[4] that the above payments constitute preferential transfers under § 547(b).[5]

**3.** See note 2, *supra.*

**4.** Plaintiff's unanswered Request for Admissions, which are taken as admitted, F.R.Civ.P. 36(a), constitute all the evidence on record.

This sparse record is at least partially attributable to Mr. Censor's willful failure to appear at trial and testify in his own behalf. This court refused to again adjourn the trial and accept the lame excuse that Mr. Censor's toothache rendered him unable to attend a trial only a short distance from his home, when he intended to depart on an extended trip to Israel the next day. Trial trans. at 17–19.

**5.** Section 547(b) provides that:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

## II.

The controlling issue, therefore, is whether, and to what extent, defendant can establish a defense to those preferences under § 547(c)(4). Under that provision, the trustee may not avoid a transfer,

to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;

11 U.S.C. § 547(c)(4) (1986).

During the 90 day preference period, defendant made the following shipments of "new value," in the form of new merchandise, to the debtor:

| | |
|---|---|
| 5/21/85 | $36,097.30 |
| 5/29/85 | 10,034.50 |
| 5/30/85 | 4,540.20 |
| 5/31/85 | 22,857.50 |
| 6/12/85 | 29,750.00 |
| 6/18/85 | 17,995.50 |

Req. for Adm.Ex. C. Applying § 547(c)(4) to the exchanges between debtor and defendant during the 90 day period, we conclude that plaintiff may avoid and recover preferential transfers to defendant in the amount of $28,725, as contended by defen-

(3) made while the debtor was insolvent;
(4) made—
(A) on or within 90 days before the date of the filing of the petition; or
(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if—
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.
11 U.S.C. § 547(b) (1986). Insolvency is presumed during the 90 days preceding the initial filing of the bankruptcy petition, § 547(f), and no effort was made to rebut this presumption. It is also undisputed that defendant received more than it would in liquidation if the transfer had not been made.

dant in paragraph 3 of its Proposed Findings of Fact and Conclusions of Law. Because this figure may also be obtained by a patently incorrect application of § 547(c)(4), it is necessary that its correct application be explained in some detail.

### III.

■ Section 547(c)(4) is properly described as a "subsequent advance rule." *E.g., In re Fulghum Construction Corp.,* 706 F.2d 171, 172 (6th Cir.1983), *cert. denied sub nom., Ranier & Associates v. Waldschmidt,* 464 U.S. 935, 104 S.Ct. 342, 78 L.Ed.2d 310 (1983). This means that a preferential transfer may be set off only against new value advanced *after* the preference was received. *See Matter of Isis Foods, Inc.,* 39 B.R. 645, 652 (W.D.Mo. 1984). Prior to enactment of the Bankruptcy Code in 1978, a "net result" rule setting off total preferences against total new value given during the former four month preference period had been judicially created. Beyond requiring that the exchanges take place within the preference period, the timing of payments in relation to advances of new value, under the net result rule, was ignored. *See* 4 L. King, K. Klee, R. D'Agostino & M. Cook, Collier on Bankruptcy ¶ 547.12 at 547–52 (15th Ed.1989). Thus, what the net result rule permitted and the subsequent advance rule forbids, is the netting of prior advances of new value against later preferential transfers.

Although the language of § 547(c)(4) plainly states that preferences are unavoidable only to the extent that "after such transfer" new value was given, confusion has resulted from reference to the net result rule in the legislative history. *See id.* at 547–52 to –53. In explaining § 547(c)(4) both Houses stated:

> The fourth exception codifies the net result rule in section 60c of current law. If the creditor and the debtor have more than one exchange during the 90–day period, the exchanges are netted out *according to the formula in paragraph (4).* Any new value that the creditor advances must be unsecured in order for it to qualify under this exception.

H.R. No. 595, 95th Cong., 1st Sess. 374 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 88 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5874, 6330 (emphasis added). Nevertheless, Congress clearly intended § 547(c)(4) to supply the formula, and that formula clearly refers only to new value given *after* a transfer from the debtor. Thus, the net result rule does not apply. *See Fulghum,* 706 F.2d at 173–174.

The difference between the subsequent advance rule and the net result rule is easily demonstrated by viewing the exchanges between debtor and defendant in chronological order:

| Date | 547(b) Preference | New Value to Debtor |
|------|-------------------|---------------------|
| 5/9  | $25,000           |                     |
| 5/16 | 25,000            |                     |
| 5/21 |                   | $36,097.30          |
| 5/22 | 25,000            |                     |
| 5/29 |                   | 10,034.50           |
| 5/30 |                   | 4,540.20            |
| 5/31 |                   | 22,857.50           |
| 6/3  | 25,000            |                     |
| 6/6  | 25,000            |                     |
| 6/12 |                   | 29,750.00           |
| 6/13 | 25,000            |                     |
| 6/18 |                   | 17,995.50           |

The net result of these transactions is a net preference of $28,725. Coincidentally, because the first preference preceded the first rendering of new value, the subsequent advance rule produces the same result; but note what happens if the order of the payments or new value is shifted slightly: if the new value given on May 21 were advanced prior to May 9 (but still within the 90 day preference period), it would be set off against a prior net preference balance of zero, thus having no effect. Further, if the new value exceeds the prior preferences, the net new value is not to be carried forward, since to do so would be to apply prior new value to a later preference. Under the net result rule, the order of transactions was of no importance—as long as they occurred during the preference period, the result was always the same.

■ Citing no authority, plaintiff contends that § 547(c)(4) is applied without maintaining a net preference balance—*i.e.,* transactions are viewed in isolation, and

only the preference immediately preceding an advance of new value is considered in determining the affect of that new value on plaintiff's total preference claim. Proposed Findings of Fact and Conclusions of Law of Plaintiff ¶¶ 21–32.

Plaintiff's interpretation of § 547(c)(4) would preclude defendant from setting off subsequent new value against a net balance of prior preferences, thus denying defendant the ability to rely on prior payments by the debtor in advancing the debtor new value. This interpretation is clearly at odds with § 547(c)(4)'s purpose of encouraging creditors to continue doing business with troubled debtors. *See, e.g., Matter of Isis Foods, Inc.,* 39 B.R. 645, 651 (W.D.Mo.1984); *In re Thomas W. Garland, Inc.,* 19 B.R. 920, 926 (Bankr.E.D.Mo. 1982). If a creditor were not allowed to set off subsequent new value against a net balance of all prior preferences, there would be little incentive for him to continue shipping any new value to the debtor in excess of the immediately preceding payment, regardless of the amount of prior payments by the debtor. Although § 547(c)(4) is properly described as a "subsequent advance rule," *supra,* "[a]n acknowledgement of the net result rule in the legislative history serves to emphasize that the drafters of the Code were attempting to retain at least the principles behind the rule in section 547(c)(4) and to recognize the realities of ordinary business transactions." *Garland,* 19 B.R. at 926.

Employing similar reasoning in *In re Paula Saker & Co., Inc.,* 53 B.R. 630 (Bankr.S.D.N.Y.1985), we rejected the suggestion that § 547(c)(4)(B) was designed to limit credit for subsequent advances only to advances that remained unpaid, noting that such an interpretation would limit the exemption in § 547(c)(4) to one subsequent advance when Congress clearly contemplated its application to more than one exchange. *Id.* at 634.

In *In re Rustia,* 20 B.R. 131 (Bankr.S.D.N.Y.1982), it was stated that, "the net result rule does not apply to the 90 day preference period as a whole; each transfer [by the debtor] must be examined independently to determine whether or not the creditor later replenished the estate," *id.* at 135; but there, subsequent new value was set off against a net preference balance. *See id.* at 136.

We thus conclude that § 547(c)(4) contemplates carrying forward the net balance of prior preferences in determining the effect of subsequent new value on the total preference claim. Under that analysis, plaintiff may avoid and recover preferences in the amount of $28,725.

The foregoing constitutes this Court's findings of fact and conclusions of law. Settle order and judgment.