**In re VAN DYCK/COLUMBIA PRINTING, Debtor.**

v.

**Barbara H. KATZ, Trustee, Appellee,**

v.

**Ida K. Stark Trust, and Drabkin Family Spray Trust, Appellants.**

**Nos. CIV.3:01CV1372(AVC), CIV.3:01CV1373(AVC).**

United States District Court, D. Connecticut.

Feb. 28, 2003.

Ira B. Grudberg, Jacobs, Grudberg, Belt & Dow, P.C., New Haven, CT, for Drabkin Family Spray Trust.

Michael S. Schenker, Francis, O'Neil & Del Piano, Hartford, CT, New Haven, CT, for appellee.

Barbara H. Katz, Law Offices of Barbara H. Katz, New Haven, CT, pro se.

### *MEMORANDUM AND ORDER AFFIRMING IN PART AND VACATING IN PART JUDGMENT OF BANKRUPTCY COURT*

COVELLO, District Judge.

This is an appeal and cross-appeal from a consolidated judgment of the United States Bankruptcy Court for the District of Connecticut (Dabrowski, J.), avoiding several payments as preferential transfers to insiders by the debtor Van Dyck/Columbia Printing Co., to appellants Ida K. Stark Trust and Drabkin Family Spray Trust, and awarding the trustee $141,250 from the Ida K. Stark Trust and $90,000 from the Drabkin Family Spray Trust.

The appellants maintain that they successfully proved at trial nonavoidance of the subject transfers, and that the bankruptcy court erred in rejecting their affirmative defenses under 11 U.S.C. § 547(c)(1), (2) and (4). By way of cross-appeal, the trustee asserts that the bankruptcy court erred in permitting the appellants to amend the answer to include the affirmative defenses, erred by failing to

deem as admitted certain requests for admission, and erred by failing to award prejudgment interest.

For the reasons hereinafter that follow, the court concludes that the bankruptcy court erred as a matter of law by failing to apply the subsequent advance rule under 11 U.S.C. § 547(c)(4) when determining the extent of new value available to offset the preferences avoidable by the trustee. The judgment is therefore vacated in this regard only, and remanded to the bankruptcy court with instructions to enter judgment for trustee against the appellant, Ida K. Stark Trust, in the amount of $69,250, and to enter judgment for the trustee against the appellant, Drabkin Family Spray Trust, in the amount of $65,000. The judgment of the bankruptcy court is affirmed in all other respects.

### FACTS

Examination of the record and transcripts of the proceedings below reveal that the debtor, Van Dyck/Columbia Printing ("VDC") was at all relevant times a partnership engaged in the printing trade. On June 19, 1995, VDC commenced a Chapter 11 bankruptcy action in the United States Bankruptcy Court for the District of Connecticut through the filing of a voluntary petition. On July 3, 1996, having failed to successfully reorganize under Chapter 11, VDC's bankruptcy petition was converted into a liquidation case under Chapter 7. The plaintiff and appellee herein, Barbara H. Katz, was appointed Trustee of the resulting Chapter 7 estate.

On August 11, 1997, the trustee initiated a series of adversary proceedings in the United States Bankruptcy Court seeking to recover several alleged preferential payments that VDC made to the appellants herein—Ida K. Stark Trust ("IKS") and Drabkin Family Spray Trust ("DFS") (collectively "the defendants"). IKS is a trust established by Ida K. Stark, the now deceased aunt of Leonard P. Drabkin, the chief operating officer of VDC. The beneficiaries of the IKS Trust are Drabkin and his lineal descendants. DFS is a trust established by Drabkin's mother, Rebecca K. Drabkin. The beneficiaries of the DFS Trust are Drabkin and his lineal descendants. The trustee alleged that the payments were voidable as preferential transfers to insiders under 11 U.S.C. § 547(b), and also alleged that the payments were voidable as fraudulent transfers under 11 U.S.C. § 548.

On September 30, 1997, the defendants filed their answer. The answer contained a general denial but did not assert any affirmative defenses. The bankruptcy court in its amended pretrial order set October 3, 1997 as the final day to answer and to file other pleadings. On February 23, 1998, the trustee mailed requests for admissions to the defendants, including one such request seeking an admission that no defenses were available under 11 U.S.C. § 547(c). The defendants did not object or otherwise respond. The bankruptcy court admitted the requests as a trial exhibit but declined to deem the requests as admitted.

The parties proceeded to trial on June 7 and 8, 1999 and, on August 20, 1999, filed proposed findings of fact and conclusions of law. On August 30, 1999, the trustee filed a reply brief and on August 26, 1999, nearly three months after the conclusion of trial, the defendants filed a motion to amend the answer to add three affirmative defenses under Fed.R.Civ.P. 8(c), made applicable to bankruptcy proceedings by Fed. R. Bank. P. 7008. On May 9, 2001, the bankruptcy court, while stating that the amendment "would visit significant retrospective prejudice upon the plaintiffs' trial preparation and presentation," granted the defendants' motion to amend their

answer and add the affirmative defenses, including: (1) the transfers were contemporaneous exchanges for new value and therefore nonavoidable under 11 U.S.C. § 547(c)(1); (2) the transfers were ordinary course transfers and therefore nonavoidable under 11 U.S.C. § 547(c)(2); and (3) the trust gave new value to VDC after the transfers and, hence, the transfers were nonavoidable under 11 U.S.C. § 547(c)(4). In determining that the defendants could amend notwithstanding prejudice to the trustee, the bankruptcy court concluded that:

> [U]nder the terms of Rule 15(b) prejudice is only relevant if amendment is requested in response to a *trial objection* founded upon the fact that the offered evidence is not within the issues framed by the pleadings. Here, the [trustee] did not lodge trial objections on that ground. Such failure to object is dispositive of that matter, since in this [c]ourt's judgment it constitutes 'implied consent' within the meaning of the first sentence of Rule 15(b), triggering mandatory treatment of defenses as if raised in the pleadings. Because the [c]ourt received trial evidence both testimonial and documentary-material to the [d]efenses, and with the tacit consent of the [trustee], those [d]efenses shall be treated as if raised in the [a]nswer.

(Bankruptcy Memorandum and Order at 2–3, May 9, 2001) (emphasis original). In addition to the three affirmative defenses, the defendants also asserted that their extraordinary support of VDC during troubled times compelled, in equity, nonavoidance of the subject transfers.

On June 13, 2001, the bankruptcy court issued a consolidated memorandum of decision. As part of that decision, the court made the following findings of fact and conclusions of law with respect to the IKS Trust and the DFS Trust.

### 1. *The IKS Trust*

#### A. General Loans

Between December 1992 and March 1995, IKS made approximately 15 separate loans to VDC in the aggregate amount of $473,000. Nearly all of these loans were evidenced by promissory notes which stated that loan repayment was due "on demand, but payable in full in thirteen months." During the year preceding the petition date, VDC paid back four of these loans to IKS totaling $148,000. The schedule below details the IKS general loan transfers during that period.

| Petition Date | Loan Date | Loan Amount | Payment Date |
| --- | --- | --- | --- |
| 06–19–95 | 10–25–94 | $43,000 | 11–23–94 |
| 06–19–95 | 10–27–94 | $50,000 | 11–23–94 |
| 06–19–95 | 01–10–95 | $35,000 | 05–03–95 |
| 06–19–95 | 03–30–95 | $20,000 | 05–03–95 |

The bankruptcy court also recognized that on February 14, 1995, IKS loaned $15,000 to VDC, a sum VDC never repaid.

The bankruptcy court found that the trustee had successfully established the elements of voidable preference with respect to the full sum of $148,000 in general loan transfers, but rejected the assertion that the transfers had been fraudulent. The court further found that the record lacked evidence supporting two of three of the affirmative defenses asserted, i.e., that the transfers were contemporaneous exchanges for new value or ordinary course transfers under 11 U.S.C. § 547(c)(1) and (2). In rejecting the proposition that the transfers were contemporaneous exchanges for new value, the court observed that IKS failed to prove that the parties intended the transfers to be contemporaneous exchanges, as each of the promissory notes signed in connection with the

transfers contained language that the debts were due "on demand, but payable in full in thirteen months." The court further found that, regardless of intent, the time interval between the loan date and the payment date for each of the four transfers of 29, 27, 113, and 34 days—was too extended to be considered contemporaneous.

In rejecting IKS' assertion that the transfers were ordinary course transfers, the court noted that no evidence was offered to prove that the loans were made according to ordinary business terms, a material element of the section 547(c)(2) defense. The court also rejected IKS's argument that, in light of IKS's extraordinary support of VDC during troubled times, equitable considerations defeated the trustee's petition to avoid the transfers.

The court did, however, recognize the new value affirmative defense with respect to one of the transfers. In this regard, the court concluded that, because VDC never repaid IKS for the February 14, 1995 loan of $15,000, this sum could constitute new value under 11 U.S.C. § 547(c)(4), and hence was available to offset either the $43,000 or $50,000 IKS general loan transfer of November 23, 1994, reducing the total avoided from $148,000 to $133,000.

### B. General Roof Repairs

The IKS Trust had also financed general roof repairs for the building which served as VDC's headquarters and production facility. The financing was accomplished through two loan advances, one on October 19, 1994, and another on November 28, 1994, totaling approximately $27,500. The repayment terms for those loans called for weekly payments of $750. Consistent with that schedule, between December 2, 1994 and May 26, 1995, VDC delivered 25 checks to IKS in the amount of $750 each and dated in precise one-week intervals, totaling $18,750. The trustee sought to recover the entire $18,750 as a voidable preference.

The bankruptcy court found that the trustee had successfully established the elements of a voidable preference with respect to the entire $18,750 in general roof repairs, but rejected the proposition that the advances had been fraudulent. The court further found that the record lacked evidence supporting the affirmative defenses, i.e., that the transfers were contemporaneous exchanges for new value or ordinary course transfers under 11 U.S.C. § 547(c)(1) and (2). In this regard, the court rejected the assertion that the transfers were contemporaneous exchanges for new value because the evidence demonstrated that the loans were set up on an installment basis, and paid over time in precisely that manner. The court also rejected the assertion that the payments were ordinary course transfers because there was no evidence in the record that the loans were made according to ordinary business terms, a required element of the section 547(c)(2) defense. The court did, however, recognize that the January 10, 1995 and March 30, 1995 transfers could constitute new value under 11 U.S.C. § 547(c)(4) for purposes of offsetting prior avoidable transfers. Because, however, 11 of the 25 roof loan transfers totaling $8,250 post-dated the last offsetting transfer of March 30, 1995, this sum was subject to avoidance by the trustee. Accordingly, the bankruptcy court concluded that the trustee was entitled to recover from IKS $133,000 in general loan transfers and $8,250 in loans to VDC for roof repairs, for a total of $ 141,250.

### 2. The DFS Trust

#### A. General Loans

Between March 1993 and March 1995, the DFS Trust made approximately six

separate loans to VDC in the aggregate amount of $210,000. Nearly all of these loans were evidenced by promissory notes which stated that loan repayment was due "on demand, but payable in full in thirteen months." During the year preceding the petition date, VDC paid three loans back to DFS, totaling $115,000. The schedule below details the DFS general loan transfers within that one year period.

| Petition Date | Loan Date | Loan Amount | Payment Date |
|---|---|---|---|
| 06–19–95 | 10–27–94 | $50,000 | 11–23–94 |
| 06–19–95 | 12–09–94 | $25,000 | 04–28–95 |
| 06–19–95 | 03–30–95 | $40,000 | 04–28–95 |

The bankruptcy court also recognized that on January 24, 1995, the DFS Trust loaned $25,000 to VDC, and that VDC did not repay the loan.

The bankruptcy court found that the trustee had established the elements of voidable preference with respect to the entire $115,000 in general loan transfers, but rejected the assertion that the transfers had been fraudulent. The court further found that the record lacked evidence supporting two of three of the affirmative defenses, i.e., that the transfers were contemporaneous exchanges for new value or ordinary course transfers under 11 U.S.C. § 547(c)(1) and (2). In rejecting the proposition that the transfers were contemporaneous exchanges for new value, the court observed that IKS failed to prove that the parties intended the transfers to be contemporaneous exchanges, as each of the promissory notes signed in connection with the transfers contained language that the debts were due "on demand, but payable in full in thirteen months." The court further found that, regardless of intent, the time interval between the loan date and the payment date for each of the transfers of 27, 145, and 34 days—was too

extended to be considered contemporaneous.

In rejecting IKS' assertion that the transfers were ordinary course transfers, the court noted that no evidence was offered to prove that the loans were made according to ordinary business terms, a material element of the section 547(c)(2) defense. The court also rejected DFS's argument that, in light of DFS' extraordinary support of VDC during troubled times, equitable considerations defeated the trustee's petition to avoid the transfers.

The court therefore determined that all of the general loan transfers were avoidable except for $25,000 which DFS loaned to VDC on January 24, 1995. As VDC never repaid this money to DFS, the court found that it constituted new value under 11 U.S.C. § 547(c)(4), and hence was available to offset the $50,000 DFS general loan transfer of November 23, 1994, reducing the sum avoided from $115,000 to $90,000.

## B. Equipment Rentals

DFS purchased printing equipment, and then leased it to VDC pursuant to a long term lease effective December 1, 1990. The record demonstrates that VDC made three lease payments of $1,500 each to DFS on December 23, 1994, December 30, 1994, and March 10, 1995, totaling $4,500. The trustee sought to recover the entire $4,500 from DFS as preferential.

The bankruptcy court found that the trustee had established the elements of voidable preference with respect to the equipment rentals, but rejected the assertion that the transfers had been fraudulent. The court further found that the record lacked evidence supporting two of three of the affirmative defenses, i.e., that the transfers were contemporaneous exchanges for new value or ordinary course transfers under 11 U.S.C. § 547(c)(1) and

(2). In this regard, the court rejected the assertion that the transfers were contemporaneous exchanges for new value because the evidence demonstrated that the loans were set up on an installment basis, and paid over time in precisely that manner. The court also rejected the assertion that the payments were ordinary course transfers because there was no evidence in the record that the loans were made according to ordinary business terms, a required element of the section 547(c)(2) defense. The court did, however, recognize that on March 30, 1995, DFS advanced VDC $40,000 in new value within the meaning of 11 U.S.C. § 547(c)(4), and this sum was available to offset the $4,500 in transfers for equipment lease from $4,500 to $0.

In sum, the bankruptcy court concluded that the trustee was entitled to recover $90,000 from DFS in general loan transfers. The court accordingly rendered judgment for the trustee against DFS in the amount of $90,000, and with respect to IKS, the court rendered judgment for the trustee in the amount of $141,250. The court did not award prejudgment interest. On June 22, 2001, the defendants filed their notice of appeal and, on June 29, 2001, the trustee filed a notice of cross-appeal.

### STANDARD

■ On appeal, a district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. Bankr.P. 8013. A district court reviews a bankruptcy court's conclusions of law under a *de novo* standard of review. *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988 (2d Cir.1990). In contrast, a bankruptcy court's findings of fact will not be set aside unless they are clearly erroneous. Fed. R. Bankr.P. 8013. *In re Man-*

*ville Forest Products Corp.*, 896 F.2d 1384, 1388 (2d Cir.1990).

### DISCUSSION

On appeal, IKS and DFS argue that the bankruptcy court erred in rejecting their affirmative defenses. Specifically, the defendants assert that, contrary to the finding of the bankruptcy court, the evidence at trial demonstrated that the payments they received from VDC are nonavoidable because: (1) they were contemporaneous exchanges for new value under 11 U.S.C. § 547(c)(1); and (2) they were made as payments of debt in the ordinary course of business and according to business terms under 11 U.S.C. § 547(c)(2). Further, the defendants assert that the court failed to credit all prior transfers, and not simply the two general loan transfers of $15,00 and $25,000 that VDC never repaid, when determining the extent of new value given to VDC under 11 U.S.C. § 547(c)(4).

In response, the trustee maintains that the bankruptcy court's findings with respect to the affirmative defenses cannot be set aside because they are not clearly erroneous. Further, by way of cross-appeal, the trustee asserts that the bankruptcy court erred: (1) by permitting the defendants to amend the answer after trial to include the affirmative defenses; (2) by failing to deem as admitted the assertion that the defendants were entitled to no affirmative defense; and (3) by failing to award pre-judgment interest.

### I

### *IKS and DFS' Appeal*

#### 1. Contemporaneous Exchanges

The defendants first argue that the bankruptcy court erred in rejecting for want of evidence their defense that the general loan transfers and advances for roof repairs and equipment rentals were

contemporaneous exchanges for new value and hence, nonavoidable under 11 U.S.C. § 547(c)(1). Specifically, the defendants maintain that the testimonial record clearly demonstrates that VDC intended to promptly repay each of the loans[1] and, moreover, the plain language of the promissory notes, stating that the debts were due "on demand," evinces an intent to promptly or contemporaneously repay the loans. Further, the defendants maintain that, contrary to the findings of the bankruptcy court, VDC did in fact contemporaneously repay each of the loans, in some cases in less than thirty days.

The court finds no error. In order to prove that the transfers were contemporaneous exchanges for new value, the defendants were required to show that the debtor and creditor intended the transfers to be a contemporaneous exchange for new value, and that the exchanges were, in fact, substantially contemporaneous. *In re Lewellyn & Co.*, 929 F.2d 424, 427–28 (8th Cir.1991). The existence of intent and contemporaneousness are questions of fact. *Id.* at 427.

In connection with the general loan transfers, the bankruptcy court found that the defendants failed to prove that the parties intended the transfers to be contemporaneous exchanges, as each of the promissory notes signed in connection with the transfers contained language that the

debts were due "on demand, *but payable in full in thirteen months*," (emphasis added). The court further found that, regardless of intent, the time interval between the loan date and the repayment date for each of the transfers (the shortest being 27 days) was too extended to be considered contemporaneous. Further, in connection with both the transfers for roof repairs and equipment rentals, the court found that the loans were set up on an installment basis and hence, the defendants could not have intended them to be contemporaneous. These findings of fact are not clearly erroneous. While the record does contain testimonial evidence that the debtor intended to repay each of the loans promptly, and the promissory notes themselves contain language that the debts were due "on demand," this evidence does not compel the conclusion that the bankruptcy court's findings of fact are clearly erroneous. *See Healey v. Chelsea Resources, Ltd.*, 947 F.2d 611, 619 (2d Cir. 1991) (where there are two permissible views of the evidence, including competing inferences drawn from undisputed basic facts, the fact-finders choice between the two views cannot be clearly erroneous). The bankruptcy court therefore did not err.

### 2. Ordinary Course Transfers

The defendants next argue that the bankruptcy court erred in rejecting for

---

[1] Leonard Drabkin, the chief operating officer of VDC, testified as follows with respect to the subject loans:

Q. All right. Now, were there conversations about further advances.
A. Yes... I asked and we discussed making *special types of loans from that point on to* deal with the cash flow problem and requirements that we were having, and the independent trustee agreed under certain circumstances to participate in this, and this was a very key event in keeping the company afloat.
Q. Okay.

A. However, the deal was that we had to pay back any loans as *quickly as possible,* and that they would hopefully be requested for emergency crises of cash flow problems. (Tr. at 251) (emphasis added). In addition, Ira B. Grudberg, an independent trustee of the defendant, testified:

Q. Okay. And then there came a time, did there not... were loans advanced by the trust with the requirement that they be paid back promptly.
A. Yes.
(Tr. at 271–72).

want of evidence their defense that the general loan transfers and advances for roof repairs and equipment rentals were ordinary course transfers and hence, nonavoidable under 11 U.S.C. § 547(c)(2). Specifically, they assert that, although they did not present evidence of industry practice or ordinary business terms in support of the defense, the bankruptcy court, in the interest of equity, should have taken judicial notice of such terms, terms that included no interest payments and hence, terms that helped VDC stay in business and continue making payments to other creditors.

The court finds no error. In order to prove that the transfers were ordinary course transfers, the defendants were required to prove, among other things, that the payments at issue were "made according to ordinary business terms." 11 U.S.C. § 547(2)(C). In proving this element, the defendants were required to come forward with evidence demonstrating that "the terms of a payment for which it seeks [ ] protection . . . fall within the bounds of ordinary practice of others similarly situated." *In re Roblin Industries, Inc.*, 78 F.3d 30, 41 (2d Cir.1996). "Th[e] determination is a question of fact that depends on the nature of the industry practice in each particular case, a factual inquiry that is appropriately left to the bankruptcy court." *Id.* In this case, the defendants failed to offer any evidence of similarly situated debtors facing the same or similar problems. For this reason, the court concludes that the bankruptcy court did not clearly err in rejecting the defense.

3. Subsequent Advances of New Value

The defendants next argue that the bankruptcy court failed to credit all prior transfers, and not simply the two transfers that VDC never repaid, i.e., IKS' February 14, 1995 transfer of $15,000 and DFS' January 24, 1995 transfer of $25,000, when determining the extent of new value given to VDC under 11 U.S.C. § 547(c)(4). In the defendants' view, the bankruptcy court erred as a matter of law by limiting the new value credit only to advances that remained unpaid when, under the majority rule, section 547(c) contemplates carrying forward the net balance of prior preferences in determining the effect of subsequent new value on the total preference claimed. When applying the majority rule (also known as "subsequent advance rule") and crediting all prior preferences, including advances for roof repairs and equipment rentals, IKS maintains that only $69,250 as opposed to $141,250 is avoidable by the trustee, and DFS maintains that only $65,000 as opposed to $90,000 is avoidable by the trustee. In response, the trustee maintains that the bankruptcy court did not err, as it simply declined to give new value credit to other advances because of evidentiary deficiencies and, in any event, contrary to the subsequent advance rule, in order to qualify for the section 547(c)(4) defense, new value must remain unpaid. The trustee does not dispute, however, that under the subsequent advance rule, the trustee has established only $69,250 in nonavoidable preferential transfers from IKS, and only $65,000 in nonavoidable preferential transfers from DFS.

As a threshold matter, the court observes that, contrary to the trustee's first argument, the bankruptcy court did not reject any of the transfers as new value on account of evidentiary deficiencies. The bankruptcy court awarded the new value credit because the defendants had established the requirements for the section 547(c)(4) defense, including the requirement that the debts were never repaid. Having reviewed the relevant authority, the court concludes that the

bankruptcy court erred as a matter of law in so doing. "The primary purpose for allowing the estate to recover preferential transfers are to discourage creditors from dismembering a financially troubled debtor during its slide into bankruptcy and to insure equitable distribution of assets among similarly situated creditors." *In re Allied Companies, Inc., v. Broughton Foods Co.*, 155 B.R. 739, 741 (Bankr.S.D.Ind.1992) (*citing In re Fuel Oil Supply & Terminaling, Inc.*, 837 F.2d 224, 227 (5th Cir.1988)). "To encourage creditors to continue dealing with troubled debtors, and possibly prevent the necessity of bankruptcy, some otherwise preferential transfers are exempt from avoidance." *Id.* One such exemption is known as the subsequent new value exception and is found in 11 U.S.C. § 547(c)(4) which provides that,

> The trustee may not avoid ... a transfer (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor–
>
> (A) not secured by an otherwise unavoidable security interest; and
>
> (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor

*Id.* "This 'new value' exception to preference recovery is directed at debtors and creditors who had multiple transactions during the preference period." *Allied Companies, Inc.*, 155 B.R. at 741. "Section 547(c)(4) is properly described as a 'subsequent advance rule.' " *Baumgold Bros. v. O.Censor & Co.*, 103 B.R. 436, 438 (Bankr.S.D.N.Y.1989). "This means that a preferential transfer may be set off only against new value advanced after the preference is received." *Id.* "[Section] 547(c)(4) contemplates carrying forward the net balance of prior preferences in determining the effect of subsequent value

on the total preference claimed." *In re Baumgold Bros.*, 103 B.R. at 440, Section 547(c)(4) was not "designed to limit credit for subsequent advances only to advances that remained unpaid, as such an interpretation would limit the exemption in § 547(c)(4) to one subsequent advance when Congress clearly contemplated its application to more than one exchange." *Id.* (*citing In re Paula Saker & Co., Inc.*, 53 B.R. 630 (Bankr.S.D.N.Y.1985)). Limiting the exemption to one subsequent advance "is at odds with § 547(c)(4)'s purpose of encouraging creditors to continue doing business with troubled debtors." *In re Baumgold Bros.*, 103 B.R. at 440 (internal citations omitted); *see also Maxwell Newspapers, Inc., v. The Travelers Indemnity Co.*, 192 B.R. 633, 639 (Bankr. S.D.N.Y.1996) (rejecting the notion that a subsequent new value must be unpaid to qualify under section 547(c)(4), and stating "[i]t bears noting, however, that most of the courts that are cited as requiring that subsequent new value be 'unpaid,' have not actually held as much, but ... have only repeated that requirement in *dicta*").

In applying the section 547(c)(4) defense in this case, the bankruptcy court limited the new value credit to the two advances that VDC never repaid. This was error, as the defense contemplates carrying forward the net balance of prior preferences in determining the effect of subsequent new value on the total preference claimed. Applying this formula, the defendants assert, and the trustee does not dispute, that the trustee may only recover $69,250 as opposed to $141,250 from IKS, and that the trustee may only recover $65,000 as opposed to $90,000 from DFS.

## II

*The Trustee's Cross–Appeal*

1. The Post–Trial Amendment

█ The trustee first argues that the bankruptcy court erred by granting the

defendants' motion to amend the answer under Fed.R.Civ.P. 15(b) to include the affirmative defenses, notwithstanding the finding that the amendment "would visit significant retrospective prejudice upon the [p]laintiff's trial preparation and presentation." In response, the defendants maintain that, because the trustee impliedly consented to the amendment by failing to object at trial to evidence offered to prove the defenses, the bankruptcy court did not err in disregarding any prejudice to the plaintiff by the amendment, and accordingly, the court did not abuse its discretion in authorizing the amendment. While the court disagrees with the defendants that prejudice is not a relevant consideration here, it nevertheless concludes that the bankruptcy court did not abuse its discretion in authorizing the amendment.

 A court's decision to amend pleadings under Rule 15(b) to conform to the evidence presented at trial rests in the discretion of the trial court and will not be reversed unless an abuse of discretion is shown. *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 94 (2d Cir.2000). Under Fed.R.Civ.P. 15(b), which is made applicable to bankruptcy proceedings by Fed. R. Bank. P. 7015, any party may move to amend the pleadings to reflect issues which were tried by express or implied consent of the parties. *Id.* "Consent may be implied when evidence relevant to an unpleaded issue has been introduced at trial without objection." *St. Joe Minerals Corp. v. Occupational Safety and Health Review Commission*, 647 F.2d 840, 844 (8th Cir.1981). "Even given facts suggesting implied consent, amendment of the pleadings should not be permitted where it would operate [to cause prejudice, that is] to deny a party fair opportunity to present evidence material to newly added issues." *Id.* (*citing Mineral Industries & Heavy Constr. Group v. OSHRC*, 639 F.2d 1289,

1292–93 (5th Cir.1981)); *see also Douglas v. Owens*, 50 F.3d 1226, 1236 (3d Cir.1995). Factors such as the need to reopen discovery, delay in the proceedings or additional litigation expenses as a result of the amendment support a finding of prejudice. *Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir.2001).

 Three months after trial in this matter, the defendants moved to amend their answer under Fed.R.Civ.P. 15(b) to add three affirmative defenses. Over the trustee's objection, the bankruptcy court granted the motion, concluding that while the amendment would "visit significant retrospective prejudice upon the [p]laintiff's trial preparation and presentation," the affirmative defenses would be considered because,

> under the terms of Rule 15(b) prejudice is only relevant if [the] amendment is requested in response to a *trial objection* founded upon the fact that the offered evidence is not within the issues framed by the pleadings. Here, the [trustee] did not lodge trial objections on that ground. Such failure to object is dispositive of that matter, since in this [c]ourt's judgment it constitutes 'implied consent' within the meaning of the first sentence of Rule 15(b), triggering mandatory treatment of defenses as if raised in the pleadings. Because the [c]ourt received trial evidence both testimonial and documentary-material to the [d]efenses, and with the tacit consent of the [trustee], those [d]efenses shall be treated as if raised in the [a]nswer.

(Bankruptcy Memorandum and Order at 2–3, May 9, 2001) (emphasis original). The court disagrees with the bankruptcy court's statement that "under the terms of Rule 15(b) prejudice is only relevant if [the] amendment is requested in response to a *trial objection* founded upon the fact that the offered evidence is not within the

issues framed by the pleadings." (Bankruptcy Memorandum and Order at 2–3, May 9, 2001). Certainly, as set forth above, prejudice to the non-moving party must always be considered under Rule 15(b), regardless of whether the record also supports a finding of implied consent. Here, while the bankruptcy court stated that "the amendment would cause significant retrospective prejudice [to the trustee]," the trustee fails to articulate, and this court cannot perceive, exactly how the amendment caused prejudice. In this regard, the bankruptcy court rejected almost all of the affirmative defenses for want of evidence, and while the defendants prevailed in part on the new value defense under 11 U.S.C. 547(c)(4), the trustee does not indicate how that result might have been different had she been able to obtain additional discovery and respond at trial. The court therefore rejects the bankruptcy court's finding of prejudice.

The court does agree with the bankruptcy court that the record supports the finding that the trustee impliedly consented to trial of new issues, i.e., the affirmative defenses. For example, in an attempt to show that the loan advances were contemporaneous exchanges under 11 U.S.C. § 547(c)(1), the defendants offered evidence of allegedly "prompt" payment practices, evidence that was simply not relevant to the trustee's case.[2] By failing to offer any type of objection, the trustee gave consent to the amendment.[3] Because the trustee has failed to show any prejudice resulting from the amendment, and there was implied consent, the court finds no error with the bankruptcy court's ultimate conclusion granting the motion to amend.

### 2. Requests for Admissions

■ The trustee next argues that the bankruptcy court abused its discretion by declining to deem as admitted her requests for admission. Under Federal Rule of Civil Procedure 36(b), a request for admissions that is not responded to within the applicable time period "is conclusively established unless the court on motion permits withdraw or amendment of the admission." *Id.* The request asked the defendants to admit that no defenses were available under 11 U.S.C. § 547(c). Although the defendants did not file a written motion to withdraw the admission, the court at trial deemed the admission to be withdrawn, as the trustee had "only realized as of a couple days [prior to trial]

**2.** Evidence of prompt payment activity is simply not relevant to any of the elements for establishing a voidable preference. In order to recover payments made to the defendants as preferential transfers, the trustee was required to show that the payments were:
1. To or for the benefit of a creditor;
2. for or on account of an antecedent debt owed by the debtor before such transfer was made;
3. made while the debtor was insolvent;
4. made–
 (A) on or within 90 days before the date of the filing of the petition; or
 (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

5. that enables such creditor to receive more than such creditor would receive if
 (A) the case were a case under chapter 7 of this title;
 (B) the transfer had not been made; and
 (C) such creditor received payment of such debt to the extent provided by the provision of this title.
11 U.S.C. § 547(b).

**3.** Further, during a colloquy with the parties at trial, the court declined to deem as admitted the trustee's request for admission that no defenses were available to the defendants under 11 U.S.C. § 547(c). In this court's opinion, this ruling placed the trustee on notice that evidence relating to the defenses would be heard.

that [she] had not received [the defendants' responses]" (Tr. at 279). The trustee claims error and asserts that she was prejudiced by the bankruptcy court's refusal to regard the request as admitted, as she was denied the opportunity to conduct discovery to understand and prepare for the defenses. She also claims that the bankruptcy court erred in considering the issue, as the defendants did not file a written motion to withdraw the admission under Rule 36(b). The court finds no error.

■■■■ Under Federal Rule of Civil Procedure 36(b), which is made applicable to bankruptcy proceedings by Fed. R. Bank. P. 7036, "the decision to excuse the defendant from its admissions is in the court's discretion." *Donovan v. Carls Drug Co., Inc.*, 703 F.2d 650, 651–52 (2d Cir.1983). "The court *may permit* withdrawal [of admissions] when the presentation of the merits of the action will be [served] thereby and the party who obtained the admission fails to satisfy the court that withdrawal of the amendment will prejudice him in maintaining his action or defense on the merits." *Id.* (*quoting* Fed.R.Civ.P. 36(b) (emphasis original)).

On February 23, 1998, the trustee mailed requests for admissions to the defendants, including one such request seeking an admission that no defenses were available under 11 U.S.C. § 547(c). The defendants did not object or otherwise respond. The bankruptcy court, during a colloquy on the issue at trial, admitted the requests as a trial exhibit but declined to deem the requests as admitted. Because it was just days before trial that the trustee realized that the defendants had never responded to her requests, the court is unable to see how the trustee might have relied on the alleged admission in preparing her case. Consequently, the court does not perceive there to be any prejudice, and certainly presentation of the merits of the action was served by including the affirmative defenses. The court also concludes that the bankruptcy court did not err in entertaining the issue during trial even though no formal motion had been filed. *See Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147, 154 (6th Cir.1997) (finding no error where the defendant did not file a formal motion to withdraw, and instead orally presented the issue at hearing, and stating "we are reluctant to assign talismantic significance to the attorney's failure to use the phrase 'I move' ").

3. Prejudgment Interest.

The trustee next argues that the bankruptcy court erred in failing to award prejudgment interest. In this case, the trustee maintains that interest should have been awarded to compensate the bankruptcy estate for the loss of the use of the avoided preferential transfers during the pendency of these proceedings. The court finds no error.

■■■■ "An award of prejudgment interest is ... within the [bankruptcy] court's broad discretion." *In re Q–C Circuits Corp.*, 231 B.R. 506, 513–14 (Bankr. E.D.N.Y.1999). "The purpose of awarding prejudgment interest is to compensate the debtor's estate for the inability to use the property during the time it was in the hands of the transferee." *In re Art Shirt, Inc.*, 93 B.R. 333, 342 (E.D.Pa.1988). "[C]ase law suggests that the award of such interest [in preferential transfer cases] although frequent, is not automatic." *Id.* "The factors influencing the exercise of this discretion include: (1) the need for full compensation of an injured party; (2) considerations of fairness and the relative equities of the award; (3) the remedial purpose of the statute involved, and/or (4) such other general principles as are deemed relevant by the court." *In re Q–C*

*Circuits Corp.,* 231 B.R. 506, 513–14 (Bankr.E.D.N.Y.1999) *(citing Wickham Contracting v. Local Union No. 3, IBEW,* 955 F.2d 831, 833 (2d Cir.1992)).

■ Applying these factors here, while the court finds room to disagree with the bankruptcy court's decision, under the facts of this case, the court does not conclude that the bankruptcy court abused its discretion in refusing to award prejudgment interest.

### CONCLUSION AND ORDER

For the forgoing reasons, the judgment of the bankruptcy court is affirmed in part and vacated and remanded in part. The court finds no error with the bankruptcy court's finding that the defendants failed to demonstrate nonavoidance of the subject transfers as contemporaneous exchanges for new value or ordinary course transfers under 11 U.S.C. § 547(c)(1) and (2). The court also finds no error with the bankruptcy court's order granting the defendants' motion to amend, declining to deem certain requests for admission as admitted, and declining to award prejudgment interest. The court does conclude, however, that the bankruptcy court erred as a matter of law by failing to apply the subsequent advance rule under 11 U.S.C. § 547(c)(4) when determining the extent of new value available to offset the preferences avoidable by the trustee. Consequently, the judgment of the bankruptcy court awarding the plaintiff-trustee $141,250 from the appellant, Ida K. Stark Trust, and $90,000 from the appellant, Drabkin Family Spray Trust, is hereby VACATED. The matter is ordered REMANDED to the bankruptcy court with instructions to enter judgment for the plaintiff-trustee against the appellant, Ida K. Stark Trust in the amount of $69,250, and for the plaintiff-trustee against the

appellant, Drabkin Family Spray Trust in the amount of $65,000.