In re INFORMATION PACKAGING INC., et al., Debtors.

Information Packaging, Inc., et. al., Plaintiffs,

v.

Golden Eagle Products, Inc., Defendant.

Bankruptcy No. 00–07204.
Adversary No. 302–0597A.

United States Bankruptcy Court, M.D. Tennessee.

April 17, 2003.

Robert J Gonzales, Nashville, TN, for Debtor.

## MEMORANDUM & ORDER

GEORGE C. PAINE, II, Chief Judge.

This matter is before the court on the adversary complaint filed by the debtors seeking to recover allegedly preferential transfers made to Golden Eagle Products, Inc.[1] At issue is (1) whether Golden Eagle received from the Debtor avoidable preferential transfers pursuant to Section 547(b) of the Bankruptcy Code and if so, (2) whether these transfers were offset by the new value exception of Section 547(c)(4). For the reasons contained herein, the court finds that Golden Eagle received preferential transfers which were completely offset by its extensions of subsequent new value. The following constitutes the court's findings of fact and conclusions of law. Fed. R. Bankr.P. 7052.

### Facts

The parties to this proceeding submitted a Joint Stipulation of Facts. The following facts are relevant to the court's decision:

1. During the ninety days preceding the Petition Date, one or more transfers of property were made to or for the benefit of the Defendant, Golden Eagle Products, Inc.

2. The Transfers were transfers of interest in property of one or more of the Debtors.

3. The Transfers were transfers to or for the benefit of the Defendant.

4. The Transfers were transfers for or on account of antecedent debt owed by one of the debtors before such transfers were made.

5. The Transfers were made while the relevant Debtors were insolvent or were presumed to be insolvent pursuant to 11 U.S.C. § 547(f).

6. As of the bankruptcy filing, (8/15/00 to 8/18/00) Golden Eagle Products, Inc. was owed approximately $1,000,000 by the Debtors for products and materials

---

1. Although the debtor is the named plaintiff in the action, this adversary proceeding was prosecuted by the Official Committee of Unsecured Creditors on the debtor's behalf.

sold on credit account by Golden Eagle to Brookstone.

7. $220,341.38 of products and materials were sold, shipped, and delivered by Golden Eagle Products to Brookstone, Inc. during the ninety day preference period as shown on accounts receivable detail aging report.

8. Of the complained transfers totaling $66,973.05, $34,891.13 was directed to particular antecedent invoices with $32,081.92 paid "on account."

9. Golden Eagle asserts that absent the stream of payment complained of as a preferential transfer, the $220,341.38 of shipments made during the ninety day period prior to bankruptcy would not have been made.

In addition to this proof, the parties offered as exhibits, copies of the invoices and checks relevant to the preference period.

### *Discussion*

#### A. Section 547(b)

▆▆▆ Under Section 547(b), preferential transfers are presumptively voidable by the trustee or debtor-in-possession of the bankruptcy estate. 11 U.S.C. § 547(b). A transfer is deemed a preference if found to be:

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days and one year before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) a transfer that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b) (2003). The debtor has the burden of proving the five elements of Section 547(b). Since these elements were stipulated to by the Defendant, the proof is uncontroverted that the payments within the ninety days prior to filing are preferential payments pursuant to section 547(b). However, a payment that is a preference may remain unavoided if it falls within one of the exceptions enumerated in section 547(c).

#### B. Subsequent New Value Under Section 547(c)(4)

▆▆▆ Golden Eagle argues that even if the payments were preferential, section 547(c)(4) provides an exception allowing setoff to the extent of any subsequent new advances. Section 547(c)(4) creates an exception for transfers "to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor." 11. U.S.C. § 547(c)(4). This new value exception applies only to the extent that the new value is "not secured by an otherwise unavoidable security interest," and is not the proceeds of a loan that has been repaid with an "otherwise unavoidable transfer." *Id.* Accordingly, Section 547(c)(4) gives a creditor who receives a preference the ability to offset that preference to the extent that the creditor advances subsequent, unsecured credit.

▆▆▆ Because Section 547(c)(4) only applies to subsequent advances, a transfer of

new value can be used to offset against preferences paid before that transfer but not against preferences paid after it. *Waldschmidt v. Ranier (In re Fulghum Constr. Corp.)*, 706 F.2d 171, 173 (6th Cir. 1983), *cert. denied*, 464 U.S. 935, 104 S.Ct. 342, 343, 78 L.Ed.2d 310 (1983). The timing of a creditor's extensions of new value is therefore crucial in calculating offset.[2]

■ "This 'new value' exception to preference recovery is directed at debtors and creditors who had multiple transactions during the preference period." *Van Dyck/Columbia Printing, v. Katz (In re Van Dyck/Columbia Printing)*, 289 B.R. 304, 315 (D.Conn.2003) (quoting *Allied Companies, Inc. v. Broughton Foods Co.*, 155 B.R. 739 741 (Bankr.S.D.Ind.1992)). Section 547(c)(4) is properly described as a subsequent advance rule meaning that a preferential transfer may be set off only against new value advanced after the preference is received *In re Van Dyck/Colum-*

*bia Printing*, 289 B.R. at 315. "[Section] 547(c)(4) contemplates carrying forward the net balance of prior preferences in determining the effect of subsequent value on the total preference claimed." *In re Van Dyck/Columbia Printing*, 289 B.R. at 315 (quoting *Baumgold Bros. v. O. Censor & Co.*, 103 B.R. 436, 440 (Bankr.S.D.N.Y. 1989)). Section 547(c)(4) was not "designed to limit credit for subsequent advances only to advances that remained unpaid, as such an interpretation would limit the exemption in § 547(c)(4) to one subsequent advance when Congress clearly contemplated its application to more than one exchange." *Id.* (citing *In re Paula Saker & Co., Inc.*, 53 B.R. 630 (Bankr.S.D.N.Y. 1985)).

■ According to the documentary evidence submitted by the parties, the following transactions are involved in application of the subsequent advance defense:

| Amount Paid | Date Paid | Subsequent Advance Amount | Preferential Net Balance |
|---|---|---|---|
| $26,041.68 | 5/17/00 | | |
| | | $130,687.78 | |
| | | | $  0 |
| $14,422.27 | 6/14/00 | | |
| | | $  4,566.00 | |
| | | | $ 9856.27 |
| $ 2,071.84 | 6/15/00 | | |
| $ 1,988.00 | 6/15/00 | | |
| | | $ 10,774.40 | |
| | | | $ 3141.71 |

2. For example, assume a creditor receives a preference of $1000 on January 1, extends new value of $2000 on January 2, receives another preference of $500 on January 3, and extends new value of $200 on January 4. The new value of $2000 can be used to offset the earlier $1000 preference but may not be used to offset the later $500 preference. Only the new value of $200 applies to offset against the $500 preference, leaving a preferential balance of $300 that the creditor must return to the bankruptcy estate as voidable.

Now assume that the preferences are switched so that the creditor extends $200 of new value on January 2 and $2000 of new value on January 4. The new value of $200 can be used to offset against the preference of $1000, leaving an initial preferential balance of $800. The new value of $2000 can then be used to offset this $800 as well as the preference of $500. In this second scenario, the final preferential balance would be $0 so that the creditor would not have to return anything to the bankruptcy estate.

The facts of this case resemble the second hypothetical.

| $ 3,464.24 | 6/21/00 | | |
| $ 115.90 | 6/21/00 | | |
| | | $ 86.00 | |
| | | | $6,635.85 |
| $ 3,266.08 | 06/28/00 | | |
| $15,015.04 | 06/28/00 | | |
| | | $ 49,427.54 | |
| | | | $ 0 |
| $ 418.00 | 07/12/00 | | |
| $ 160.00 | 07/12/00 | | |
| | | $ greater than $100,000 | |
| | | | $ 0 |

Based upon mathematical application of the subsequent advance rule to the stipulated evidence, the court finds that section 547(c)(4) protects Golden Eagle from avoidance on all of the preferential payments received.

### Conclusion

Accordingly, the court dismisses the plaintiff's adversary complaint, and finds that Golden Eagle is not required to return any payments it received during the preference period. The subsequent advances of new value negated any preferential payments pursuant to 11 U.S.C. § 547(c)(4), and the court therefore dismisses the plaintiff's complaint with prejudice.

It is therefore so ORDERED.